CITED *in Horner, Ad.*, v. *Conover*, 2 *Dutch.* 140; *Hockenbury* v. *Alpaugh*, 5 *Vr.* 343.

---

## ROBERT EAKIN v. THE MORRIS CANAL AND BANKING COMPANY.

1. It is not sufficient cause to set aside a verdict, that a person in the employ of the successful party, conversed during the trial on one occasion with two of the jurors, took refreshments in the same box with them at an oyster saloon, and without their knowledge paid for them, if it does not appear that the successful party was implicated in the transaction, or that they talked about the question in the cause, or that the jurors were at all influenced by the occurrence.

2. The sanctity of the jury-box is to be carefully preserved, but this rule is not to be so applied as to do injustice to innocent parties.

This was a motion for a new trial.

Argued before OGDEN and POTTS, Justices, by Messrs. *Hoxey* and *Ryerson* for the motion, and Messrs. *F. T. Frelinghuysen* and *Bradley*, contra.

POTTS, J. This cause was tried at the last Passaic Circuit, and a verdict rendered for the defendants. Upon the suggestion of the court and by the consent of the counsel of the respective parties, the rule first applied for in this case was turned into a motion for a rule absolute to set the verdict below aside, and for a new trial, with leave to take affidavits on both sides, and bring on the hearing at the present term.

The motion is founded upon an affidavit of *Hiram Gould*, who swears, in substance, that one Unaughst, who it appears is an employee of the defendants, as supervisor of a part of their canal, while the said trial was pending, and the evening before the case was submitted to the jury, was in company with two of the jurors empannelled, to wit: Ira Brown and John P. Zeliff; and was holding private and confidential conversation with them and one Daniel K. Allen, and that said jurors were feasted with oysters and drink, at the expense of the said Unaughst, at the oyster cellar of James Bunn, in Paterson. The witness was in an adjoining box, but the conversation was in so low a tone, he could not hear what was said; he saw Unaughst pay for the oysters and drinks; and believes the conversation was upon the evidence and other matters relating to the cause, and that the opinion of the said two jurymen was influenced thereby, &c. The remaining testimony on the part of the plaintiff went only to show Unaughst's connection with the defendants as above stated, that he attended at the trial, was employed in hunting up testimony, &c., and was a witness.

The defendants produce the examinations of Zeliff, Brown, Unaughst and Allen. The affidavits are now before us, and we have heard the arguments of counsel.

*Zeliff* testifies that on the occasion in question, he and Brown, the other juror, stopped at Bunn's oyster saloon and called for an oyster stew, and witness also for some brandy; that the oysters and liquor were furnished them in one of the boxes; that Unaughst and Allen came into the box, and were furnished with oysters there; that he had not invited

any body nor had any body invited him to take oysters, there; that he remained no longer than time to eat his oysters; that Unaughst left the box first; that when witness came out he went up to the bar to pay, and was told by the attendant they were paid for; that Unaughst stood there; he did not see him pay, but it appeared to witness that he had paid for them; that whilst they were in the box, the conversation was carried on the usual tone of voice; that Unaughst held no conversation with witness concerning the matters in controversy in that suit, nor with any of the others as the witness recollects; nor did he attempt to hold any conversation with witness about the suit either confidential or otherwise.

*Brown's* testimony is to the same effect. He swears that he had no conversation with Unaughst or any body else in the saloon on the subject of the trial that night. The oysters he had were paid for by somebody, he does not know whom. On stepping up to the bar he was told they were paid for, and he then treated to segars.

*Unaughst* swears that he and Allen went into Bunn's that evening; one of them called for two stews; Bunn, he thinks, put the oysters in the box, and told him and Allen they were there; they went in, sat down and eat them; saw Brown and Zeliff there taking oysters; witness eat his oysters and left, went to the bar and handed Bunn a dollar bill; he asked if he should take four stews out of it, and witness told him he should; he had not arranged with Zeliff or Brown to stop or take refreshments there; he held no private or confidential conversation with Brown, Zeliff or Allen; did not talk with the two jurors or either of them concerning the evidence or other matters relating to the trial; and don't know that he said any thing while there; never thought of such a thing as influencing the jurors by paying for the oysters.

*Allen* corroborates the other witness—says there was no private conversation in the box; he went in with Unaughst and left with him; heard no conversation at all as far as he

recollects, on the subject of the cause, on that occasion, in the hearing of the jurors.

Taking the evidence altogether, it furnishes no ground for the belief that the jurors were tampered with, or that any attempt was made to influence them by Unaughst. All that Gould testifies to is, that these four persons were in a box, eating oysters, on the evening in question. He heard nothing that was said. He saw Unaughst pay for the oysters—and that is all. The four persons implicated all testify that their being there together was accidental; that they were there but for a very short time; that but little conversation was had; that what was said had no relation to the merits of the cause; and that though Unaughst paid for the oysters, it was without the knowledge of the jurors; and as far as appears, without the slightest intention to influence them. If Unaughst had invited the jurors to eat and drink with him; if he had paid for what they had in their presence; if he had directed Bunn to tell them he had paid for them, there might have been some ground to suspect that he intended to produce some impression upon their minds favorable to the side on which he was a witness, and to the party of which he was an employee. But he had invited Allen to take oysters with him—they had been accidentally put in the same box where the two jurors were—and when Unaughst went to Bunn to pay, Bunn asked him if he should take for the four, and he simply assented. In doing so he acted improperly; but I see no evidence here of design of premeditation —of any intention to do wrong.

We entirely concur in the note laid down in *Tomlin* ads. *Cox*, 4 *Har.* 80. Courts can hardly be too scrupulously careful to guard against any and every attempt to invade the sanctity of the jury box, or corrupt the fountains of justice, but we must not make this rule the instrument of injustice to innocent parties. There is here no pretence even that the defendants are at all implicated in the transaction complained of; nor the slightest ground to believe that the two jurors were influenced by the occurrences in question.

The motion for a new trial must, therefore, be denied.

OGDEN J. concurred.